ANTHONY LOWENSTEIN, ESQ. (CSBN 201269)
LAW OFFICES OF ANTHONY LOWENSTEIN
4040 Civic Center Dr. #200, San Rafael, CA 94903
Phone: (415) 272-1292  /  Fax: (415) 366-2110
Anthony@LowensteinLaw.com
Attorney for Defendant, CHARLYNE BASADA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>CHARLYNE BASADA,<br><br>　　　　Defendants | **CASE NO:   CR-15-437-CRB**<br><br>**DEFENDANT'S<br>SENTENCING MEMORANDUM** |

## INTRODUCTION

Defendant CHARLYNE BASADA ("BASADA") stands convicted by her guilty plea of one count of Bank Fraud (18 USC § 1344) and one count of Aggravated Identity Theft (18 USC § 1028A), for her underlying conduct wherein BASADA embezzled money from several employers. BASADA accepted responsibility, immediately admitted her misconduct, and promptly pleaded guilty in this case and cooperated with the Government, to make her financial records available and open to the victims to review and seek restitution. Her reasons for her conduct, elaborated below, were primarily mentally/psychologically driven and not based on other varied financial activities as a *con artist*. The facts related to the charges are elaborated upon below, and in the Pre-Sentence Report ("PSR").

## THE PRESENTENCE REPORT
## THE 18 U.S.C. § 3553(a) FACTORS

The PSR PART F. ¶ 99 outlines for the Court's consideration factors that may warrant a downward Variance (sentence below the guidelines), including the Defendant's upbringing, mental health, and role as a primary caregiver (to her 3 children).

The PSR Sentencing Recommendation recommends a downward variance, with the opinion that a guideline sentence, with an additional two years for Aggravated Identity Theft, is greater than

necessary to achieve the goals of sentencing. It should be noted that the USPO's first (initial) PSR Sentencing Recommendation, (albeit mistaken about the Guideline Calculations for Count 3 of 33-41 months, in lieu 41-51 months), the Probation Officer determined a recommendation under the overarching "Booker" 18 USC §3553 analysis, that a Sentence of "12 months custody, to be followed consecutively by 24 months custody, for a total sentence of 36 months will be significant for this defendant.", highlighting two of several important factors underlying that recommendation, including (1) that she has never served a custodial sentence and a three year sentence will provide punishment for her actions, while allowing her to return to the lives of her children while they are still young and (2) The defendant owes a large amount of restitution, and a shorter custodial sentence will allow her to return to the community sooner and begin making payments toward her restitution, assisting the victims – (something Basada has avidly stated she is committed to working towards).

Upon realizing the guideline miscalculation (of 41-51 months, in lieu of 33-41 months), the USPO has doubled her sentencing recommendation (from 12 months custody on Count 3, to 24 months)! Stated another way, although the low-end of the guideline, when corrected, goes up by 8m, and the high-end of the guideline goes up by 10m, the USPO has disproportionately increased the recommendation by 12 months. If the corrected analysis be made *proportional*, the USPO's initial recommendation was 36% of the low-end of the guideline (12/33). With the corrected guideline, that proportional increase should be 36% of 41, which is [just under] 15 months.

Therefore, IF the Court is to follow the USPO's recommendation in the PSR, it is submitted that the Court should sentence the Defendant to at most 15 months on Count 3, and 24 months consecutive on Count 17, for a Total Sentence of 39 months.

**However, the Defense submits that, despite the corrected guideline in the Revised PSR, a Total Sentence of 36 months (12m on Count 3, and the 24m consecutive on Count 17) remains the fair and just Sentence, that is sufficient (and more would be greater than necessary) under the "Booker" §3553 analysis, to meet all of its sentencing goals.**

//

**Defendant's Criminal History**

The Defendant has a criminal history score of four, establishing a Criminal History Category (CHC) of III. It is submitted that CHC III over-represents BASADA's criminal history. First BASADA has 4 criminal history points which is at the low end of CHC III (4,5,6). Moreover, all 4 of BASADA's prior convictions are (1) misdemeanors, (2) occurred in a relatively short span of time (2002-2005), (3) occurred over 15 years ago, and (4) all but one, incurred minor sentences of 7-15 days of jail. **The defendant's conduct is congruent with a person with an untreated mental illness and/or alcohol problem**". This is corroborated by the common sense that she commit these frauds knowing the risk she was placing herself and the livelihood of her family in. The Defendant was clearly psychologically and/or mentally ill to some extent – indeed the nature and circumstances of the crime(s) were *kamikaze* insanity '*suicide'*, in that Defendant absolutely knew (she had to have known) that she would be caught. It was only a matter of time. It is this kind of self-destructive nonsensical crime – one that is impossible to commit and avoid detection and the consequences – that is emblematic of the Defendant's psychological and mentally ill state of mind that begot and perpetuated such conduct. Thankfully, as elaborated below, the Defendant actively engaged in and benefitted from counselling and treatment to alleviate, monitor, control and better her mental health and condition, and prevent such psychological influences and alcohol use precipitating such conduct from occurring again.

**A downward variance**, followed by Supervised Release with all the recommended conditions mandated still fully meets the overarching statutory charge of imposing a sentence that is *Sufficient But Not Greater Than Necessary* to serve the Sentencing Goals of 18 USC § 3553(a) in this case: *U.S. v. Carty*, 520 F.3d 984 (9th Cir. 2008).

### THE NATURE AND CIRCUMSTANCES OF THE OFFENSE

The offenses were serious and the defendant's conduct harmful. The conduct is only mitigated (and reinforced) by the Defendant's mental state of mind, and alcohol use as elaborated above and below.

### HISTORY AND CHARACTERISTICS OF THE DEFENDANT

CHARLYNE BASADA fully accepts responsibility, not only, in admitting her conduct, but in taking steps to heal and rehabilitate herself, to address her problems that lead him to commit such conduct. This includes seeking and maintaining counselling and mental health treatment: BASADA has benefitted from ongoing counselling from her therapist, Melanie Cleary, at Dolan Mental Health. Basada has been using her ongoing therapy to gain insight and perspective of her past misguided

conduct and future (hopefully productive and lawful) conduct. BASADA has also acknowledged the role that her use of alcohol played on her exercising poor judgment.

BASADA loves and cares for her 3 children, the youngest of which is an infant, who was born during the pendency of this case, and hopes to re-connect with them while they are still young, and as best can be done, repair the inevitable damage to her relationship with them caused by her convictions and impending incarceration and separation from their lives. There is every reason to believe that BASADA will strive to return to being a great mother to her children. BASADA has also maintained a close relationship, throughout, with her very supportive husband and siblings and it is submitted that such strong family ties and support is a strong indicator of her future success and non-recidivism. BASADA's Reference Letters, by all accounts characterize her as a great parent and wife, but more significantly and pertinently, as a <u>kind</u>, <u>honest</u>, <u>caring</u>, indeed selfless, <u>giving</u> person to all others in her life, and indeed <u>to her community</u> as a whole – be it in school, church, fundraisers, etc..

It is uncannily paradoxical, how the Defendant who commit such dishonest conduct in this case, simultaneously bears such good qualities with so much giving of herself and positive contribution to others and her community, as consistently and clearly reported by her references. When Sentencing the Defendant, and considering her <u>history and characteristics</u>, the Defense urges the Court to consider, that despite and opposed to her crimes, there is so much good and positive that BASADA contributes to others and the community.

**REFERENCE LETTERS – SEE EXHIBIT 1**

The Defendant provided to Probation Department, and attaches for this Court ten (5) Reference Letters for the Courts review, that speak so well to BASADA's history and characteristics:

**(1) Rachel Polaris**, (cousin).
**(2) Cherrilyn Badilla**, (cousin)
**(3) Abigail Chun**, (friend)
**(4) Donna de Lena-Vasquez** (friend)
**(5) Abbie Bernardo**, (sister)

These letters are very worthwhile to read, as they all have a common thread: (the great sadness and hardship to BASADA's children of losing her to incarceration for her convictions, and) a testament to BASADA's many redeeming qualities, (and her ability to rehabilitate); that her shocking misconduct in this case belies the otherwise overtly, universally kind, caring and giving person, colleague, family member, mother, and community contributor that she has always shown to be.

//

-4-
SENTENCING MEMORANDUM
CASE NO. CR-15-437-CRB

 **(2) THE NEED FOR THE SENTENCE IMPOSED—**
  **(A) TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE;**
  **(B) TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT;**
  **(C) TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT**

BASADA's crimes, for which she has taken accountability, shall remain on her record forever. Her professional, financial career that she worked so hard for is <u>over</u>. She will always be a convicted felon, of fraud, with all its attendant consequences, including financial prohibitions[1], as well as BASADA's first custodial sentence in Prison. **BASADA's felony conviction, along with 36 months in Prison is certainly enough to emphasize the seriousness of the offense and deter others – and certainly her, the Defendant** – from engaging in such criminal conduct, thereby providing him just punishment and promoting respect for the law, as mandated in § 3553(2)(A) and (B);

The Government may argue that Defendant's *white-collar* crimes were cool, calculated and rational. <u>That is not accurately so</u>. As described above, **BASADA was in a mentally ill (and alcohol influenced) state**. BASADA's conduct was anything but "calculated" or "rational". A "rational" person would realize that eventually (and soon), *the game will end*; she <u>will</u> be caught; she will have to pay restitution for the theft; <u>and</u> she will then lose <u>everything</u> (her family, her fortune, her career, her dignity, and her freedom). BASADA was caught in a loop, where she was (still) mentally ill, using alcohol, and untreated. For a person, (like BASADA) addicted to a substance and/or mentally ill, **Deterrence does not work without treatment**. Now, that BASADA has received counselling, she sees the *insanity* <u>and</u> wrongfulness / harmfulness of her actions, in a way that he just couldn't before her treatment and transformation.   BASADA shall serve a significant sentence and then will have to comply with all terms of Supervised Release. Indeed, BASADA has (and continues) to suffer a just punishment and acute consequences that vividly reflect the seriousness of the offense and promotes respect for the law, and – along with all the consequences above – afford very adequate deterrence to criminal conduct. **Moreover, BASADA has demonstrated commitment to work, family, community and rehabilitation; she is very unlikely to reoffend and poses no danger to the public; Lengthy Incarceration is not necessary to protect the public. BASADA has great family support that aids rehabilitation and lowers her risk of recidivism**.

---

[1] She will continue to have a felony conviction on her record (which is "permanent and pervasive.": U.S. v. Smith 683 F.2d 1236 (9th Cir 1982); beyond a formal sentence, ex-prisoners endure other lasting forms of punishment of permanent social stigma: U.S. v. Wulff 758 F.2d 1121 (6th Cir 1985); as "a felony conviction irreparably damages one's reputation."; U.S. v. Prosperi 686 F.3d 32  (1st Cir 2012

The relationship between family ties and lower recidivism has been consistent across study populations and periods; The better family ties are maintained, the lower the recidivism rate.[2] This is a case where society will benefit more from defendant's support of family and presence in society than from defendant's incarceration; *U.S. v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006). BASADA's family has been instrumental to helping and supporting and motivating her overcoming her life's challenges and throughout this prosecution. They have supported her, allowed her to come to terms for care for her children, get her life together, and repair her life and lifestyle and goals.

**(D) TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER;**

**Defendant's need for treatment and educational and vocational training, under §3553(2)(D)**

It is hoped that BASADA's sentence will consider her amenability to treatment and as part of her Sentence under § 3553a(2)(D) and that she will continue to participate in drug and mental health treatment and vocational programming, in her chosen path that allows her to maintain her own peace and balance, as well as to help others. Thus, as is often true with Defendants, and especially true for BASADA, providing the Defendant with her needed treatment and educational and vocational training, under §3553a(2)(D) serves to strengthen and make her a more productive and law-abiding citizen, who no longer poses a recidivism threat, thereby protecting the public from further crimes of the defendant, as mandated in §3553a(2)(C). Moreover, returning BASADA to the community as a law-abiding, hard-working productive citizen allows her to start paying the victims Restitution, an important goal under § 3553a(7). BASASDA's amenability to treatment and motivation to abide by the law, are strengthened by her desire and commitment to support and care for her children, husband and whole family, all of whom strongly support her. As this Court knows, strong family support is a strong indicator of future success in life, abiding by the law, and abstaining from past patterns of mental illness and/or alcohol/drug abuse.   As noted in the PSR ¶ 99, and reference letters, BASADA is the deeply involved <u>primary caregiver</u> to her 3 young children. Any period of incarceration places a enormous hardship on them, as well as on BASADA's husband, who must try and care for <u>and</u> financially support the three children on his own, during BASADA's incarceration.

---

[2] [Phyllis J. Newton, Jill Glazer, & Kevin Blackwell, Gender, Individuality and the Federal Sentencing Guidelines, 8 Fed. Sent'g Rep. 148 (1995); Shirley R. Klein et al., Inmate Family Functioning, 46 Int'l J. Offender Therapy & Comp. Criminology 95, 99-100 (2002)].

BASADA has also acknowledged the role that her use of alcohol played on her exercising poor judgment. Basada requests that she needs and would benefit in her sentence from Residential Drug Treatment (RDAP), if and as eligible by BOP. She knows that her use of drugs and alcohol clouded her judgment, instigated her thoughtless actions, and was a crutch used by BASADA to "cope" and prevented her from being honest with herself and her family, and greatly contributed to her involvement in the instant offense, and especially given her other health issues and challenges, Basada definitely expresses a desire to participate in therapy to learn strategies to "cope" without drugs or alcohol, so as to live more healthily, risk less mental illness and most importantly, never commit such crime again.

 **(3) THE KINDS OF SENTENCES AVAILABLE;**

This Court has the ability and the options to fashion a sentence that provides a just punishment, while balancing and effecting all of the § 3553 Sentencing goals.  BASADA requests that her sentence recommend and allow for her ultimate placement in the BOP's Residential Drugs and Alcohol Program (RDAP), with the attendant reduction in sentence and future placement in a halfway house or community confinement facility, under 18 USC §3621(e), which would allow her re-integration back to the community in a way she could see her children, and obtain vocational training and/or work, to begin earning a living and paying restitution. Utilizing such sentencing alternatives and transitions would best achieve the §3553 sentencing goals.

## CONCLUSION

CHARLYNE BASADA really messed up. She had it all – a loving family, and a great career. Due to her own issues and mental problems, she succumbed to carelessness, greed and excess in a spree of fraud, leaving a wake of destruction and loss to her victims – <u>and</u> to herself <u>and</u> her children/family. BASADA has (rightfully) lost everything and is left to rebuild her life as best she can. The important part, as pertains to sentencing, is that BASADA fully understands the truth and power of those statements; she has taken responsibility in a real sense, and is committed to self-therapy, law abiding, hard work, care for her children and family, and contribution to community service for the remainder of her life, when she emerges from incarceration.

BASADA's mental issues, use of alcohol, and poor judgment do <u>not</u> excuse her conduct but at least contribute to understanding of how and why it happened. <u>The felony convictions of Bank Fraud and Aggravated Identity Theft, and a sentence of 36 months, along with 5 years' supervised release, including appropriate terms and conditions more than serves all Sentencing purposes.</u> A term of further imprisonment would make the sentence greater than necessary to serve the goals of sentencing under §3553(a), and still such a sentence will still promote respect for the law: neither the

Defendant nor others in society will believe that, with felony convictions, and 3 years in Prison, that the Defendant has not been justly punished for her crimes. The relative impact of a sentence is based on the characteristics of the defendant as much as it is based on the nature or length of the term. BASADA has and will continue to suffer grave consequences as a result of her conviction. Her supportive family have helped and will continue to help her maintain her integrity and firmly put her life back on a positive track for her own good and that of her children and community. BASADA has been perfectly compliant on pre-trial release and likewise is committed and confident that she will successfully comply with all terms of Supervised Release, and with the support of her family, regain her role of an active mother, continue personal therapy, find and maintain employment to support herself and pay restitution to the victims, and not re-encounter the criminal justice system again.

Dated: June 1, 2016:

Respectfully submitted,
LOWENSTEIN LAW OFFICE
By: _____/s/_____
ANTHONY LOWENSTEIN
Attorney for Defendant, CHARLYNE BASADA